[No. A081858. First Dist., Div. Two. Dec. 9, 1998.]

NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff and Respondent,
v.
RIDOUT ROOFING COMPANY, INC., Defendant and Appellant.

## COUNSEL

Richard W. Meier for Defendant and Appellant.

James Stephen Thorp, Branson, Brinkop, Griffith & Strong and John R. Campo for Plaintiff and Respondent.

## OPINION

**HAERLE, J.—**

### I. INTRODUCTION

This is an appeal from a summary judgment granted in favor of the plaintiff and respondent (insurer) and against the defendant and appellant (insured). Both parties brought motions for summary judgment; the trial court granted the insurer's and denied the insured's. The case principally

poses the issue of the insurer's right to settle multiple claims brought against the insured when that settlement substantially impacts the insured's $5,000 "per occurrence" deductibles. We affirm.

## II. Factual and Procedural Background

The appellant, the insured, is a San Lorenzo (Alameda County) based roofing contractor which does business substantially in that and neighboring counties. During the relevant time period, the insured did many major roofing jobs for, e.g., developers and general contractors on condominium and subdivision projects.

During the one year from May 1, 1989, to May 1, 1990, it was insured under a commercial general liability policy (CGL) issued by the respondent, the insurer. During the period between May 1989 and June 1994, 11 separate claims were made against that policy, some in the form of simple claims, others apparently via actual litigation. Some of these claims were solely by the party then owning the property on which the insured had done its roofing work (i.e., the condominium association or an individual homeowner), but others included claims for indemnity by the general contractor or the developer, as the case may be. It seems apparent from the record that all 11 claims were tendered to the insurer by the insured. These tenders were accepted by the insurer, albeit under a reservation of rights.

These claims were adjusted by an independent outside adjusting firm, working, of course, in collaboration with the insurer. Also involved were several other insurers, i.e., those insurers who provided CGL coverage to the insured subsequent to the year for which this insurer provided that coverage. During a period commencing sometime in 1993 and apparently concluding in June 1997, the insurer (and the other insurers) settled all 11 claims; this insurer paid out a total of $155,340.94.

The policy included a deductible endorsement providing for a deductible of $5,000 "per occurrence." After each settlement, the insurer demanded reimbursement of the full amount of the deductible (or such lesser amount as it had actually paid out) from the insured. The latter took the position, via letters to the insurer or its adjuster that, inter alia, it did not owe that sum because the policy at issue did not cover the claims asserted because there were no claims of damage to the property of third parties.

In February 1996, the insurer sued to recover its then claimed total of deductibles. It later amended that complaint to add other settled claims, and

alleged that the insured owed it a total of $50,583.34. After discovery, first the insurer and later the insured moved for summary judgment. The former's motion was granted and the latter's denied on December 31, 1997. A formal judgment was filed the same day, and a timely notice of appeal by the insured followed.

## III. Discussion

### A.

The parties concede that the CGL policy implicated here is, in all material respects, the standard 1986 CGL policy.

The insuring clause of the policy is, of course, broad, but is followed by many itemized exclusions. The basic coverage is for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The term "property damage" is later defined to mean "[p]hysical injury to tangible property, including all resulting use of that property; or . . . [l]oss of use of tangible property that is not physically injured." The policy is, as noted, written on a "per occurrence" basis with a stated deductible of $5,000 per occurrence.

One of many exclusions to the "property damage" prong of the policy[1] is exclusion "j," which, in relevant part, excluded damage to: "(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or [¶] (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Another such exclusion is exclusion "l," which in relevant part excluded " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " We shall, hereafter, refer to these two exclusions as, collectively, the "work product exclusions."

The policy also deals with indemnity claims by third parties against the insured by, first, excluding (via exclusion "b") property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, this exclusion is then immediately followed by the following exception: "This exclusion does not apply

---

[1]The policy also covered, of course, bodily injury, a topic not relevant here.

to liability for damages: [¶] (1) Assumed in a contract or agreement that is an 'insured contract' . . . ." The latter term is thereafter defined in definition 6, g, as including: "That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of . . . 'property damage' to a third person or organization, if the contract or agreement is made prior to the . . . 'property damage.' "

The basic insuring agreement at the beginning of the policy also provides that the insurer "may investigate and settle any claim or 'suit' at our discretion." And, as in most CGL policies (see Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1998) ¶¶ 7:419, 15:488, pp. 7A-110, 15-111), there is also the requirement that the insured "[c]ooperate with us in the investigation, *settlement* or defense of the claim or 'suit' . . . ." (*Id.* at ¶ 7:420, p. 7A-110, italics added.) Perhaps most importantly, the second page of the "Deductible Liability Insurance" endorsement (the endorsement which recorded the $5,000 per occurrence deductible) includes the following proviso: "4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us."

B.

■ The insured's principal contention on appeal is that the settlements effectuated by the insurer were not binding on it and should not impact on its deductibles. It contends that the losses involved all fell within the work product exclusions, and hence were not covered "property damage" losses under the policy. It thus argues that the insurer was effectively a "volunteer" in effectuating the $150,000 plus in settlements it did, and such action on its part should have no impact on either it or its deductibles.

The insurer argues here, as it did below, that its actions in (a) settling the 11 claims as it did and (b) then looking to the insured for reimbursement of the deductibles are eminently justified by, principally, paragraph 4 of the "Deductible Liability Insurance" endorsement. It also relies here (albeit apparently for the first time)[2] on the policy's coverage of "insured contracts."

Paragraph 4 of the deductible endorsement is, obviously, a broadly worded clause and one specifically directed at precisely the issue the insured

---

[2] Our review of the record discloses no reference below—by either the parties or the trial court—to the issue of coverage of "insured contracts."

complains of here: the right of the insurer to look to the insured for payment of deductibles as and when the former settles claims on behalf of the latter. Also relevant, of course, are the broader, but still very pertinent, clauses giving the insurer the right to "settle any claim or 'suit' at our discretion" and requiring the insured's cooperation in the settlement of claims or suits.

■ One text states flatly that the insurer's "right to control the defense of any action against the insured . . . includes the right to . . . negotiate settlement, and to otherwise conduct defense of the action. [¶] . . . By accepting a liability insurance policy, the insured is bound by these terms." (Croskey et al., Cal. Practice Guide: Insurance Litigation 3, *supra*, ¶ 12:207, p. 12B-2; see also *id.* at ¶ 15:488, p. 15-111 and *Robertson* v. *Chen* (1996) 44 Cal.App.4th 1290, 1294-1295 [52 Cal.Rptr.2d 264].) Later, the cited text discusses the impact of the "standard" CGL insurer's settlement rights in the specific context of deductibles: "A policy with a deductible typically allows the insurer to defend and settle claims against the insured *without* the insured's consent (unless the policy expressly provides otherwise). This is true even if, because of the deductible, the insured is obligated to pay (or reimburse the insurer for) the entire settlement. (Example: Insurance Co. settles claim against Insured for $5,000 where the policy contains a $10,000 deductible.)" (Croskey et al., Cal. Practice Guide: Insurance Litigation 3, *supra*, ¶ 15:497, p. 15-113.) Although the authors cite no authority in support of this statement, for the reasons to be developed hereafter we agree with it, at least as applied to a dispute such as the instant one where the only alleged detriment to the insured was the consumption of its deductibles.

Nationally, there are cases on both sides of the issue of whether an insurer may be liable to an insured for settling cases within the policy limits but, in the process, causing detriment to the insured. The outcome appears to depend upon (a) the nature of the detriment imposed on the insured and, of course, (b) the precise policy terms. (See Annot., Liability of Insurer to Insured for Settling Third-Party Claim Within Policy Limits Resulting in Detriment to Insured (1994) 18 A.L.R.5th 474, 484-485, § 2[a].) Even where the alleged detriment is precisely that alleged here, the invasion by the insurer of the deductible of the insured, the authority is split. (See *id.* at pp. 508-516, § 8.)

Although there is no California authority on this precise point, there is such in analogous areas, i.e., where there is different alleged "detriment" to the insured. The leading and most recent case on point is from Division Three of this district, *Western Polymer Technology, Inc.* v. *Reliance Ins. Co.*

(1995) 32 Cal.App.4th 14, 23-28 [38 Cal.Rptr.2d 78] (*Western Polymer*). There, in the converse procedure from the instant case, the insured and its president and principal shareholder sued their insurer for settling a third party liability claim brought by a customer against the insured. The plaintiffs claimed that the settlement, although for an amount less than the policy limits, "injured their reputations and damaged [the insured's] ability to recover on its cross-complaint against the third parties." (*Id.* at p. 18.) The trial court had granted the defendant insurer's motion for summary judgment and, in an opinion authored by Justice Chin, the court ultimately affirmed that result on the basis of the facts there implicated.

In the process, it first alluded to some generally applicable insurance law maxims. ▪ Thus, it noted that the "parties to the insurance contract must refrain from doing anything that will injure the right of another party to receive the benefits of the agreement. [Citations.] . . . [¶] . . . In general, the insurer is entitled to control settlement negotiations without interference from the insured. [Citations.] As a result, an insurer normally cannot be liable to the insured if the insurer does no more than settle a claim or suit within the policy's limits. [Citation.] [¶] There are limits, though, to the latitude afforded insurers in effecting settlements pursuant to 'deems expedient' clauses and those of similar import." (*Western Polymer, supra*, 32 Cal.App.4th at p. 24.)

Next, the court analyzed the few California cases dealing with the limitations on the authority of an insurer to settle to the detriment of the insured. (*Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652 [320 P.2d 140]; *Rothtrock* v. *Ohio Farmers Ins. Co.* (1965) 233 Cal.App.2d 616, 618-623 [43 Cal.Rptr. 716]; *Barney* v. *Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966, 974-978 [230 Cal.Rptr. 215]; *Security Officers Service, Inc.* v. *State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887, 890-896 [21 Cal.Rptr.2d 653].) It summarized the principle it extracted from them as follows: "An insurer cannot unreasonably refuse to settle within policy limits and thus gamble with its insured's money to further its own interests. [Citation.] *Similarly, an insurer should not further its own interests by settling a claim within policy limits through the use of the insured's money without some form of consent by the insured.*" (*Western Polymer, supra*, 32 Cal.App.4th at p. 26, italics added.)

Another text writer, citing essentially the same authority, summarizes the applicable principle as follows: ". . . under some circumstances, a settlement arranged by the insurer may adversely affect the insured's interests and

constitute a breach of the duty of good faith." (Clifford, Cal. Insurance Disputes (1997) § 10.06C, p. 10-14.)

■ As noted, no California case has considered whether the covenant of good faith and fair dealing may operate to limit the policy's express grant of discretion to the insurer to effect settlements that substantially "eat up" an insured's deductibles.[3] It is, we concede, plausible to argue that the *Western Polymer* line of authority might be utilized to limit that discretion, i.e., to hold that it is subject to limitation if, by its actions, the insurer violates the covenant of good faith and fair dealing. However, we conclude that line of authority should not be so extended. Rather, we hold that (1) the covenant may not be so utilized, (2) even if the *Western Polymer* principle could apply to a "deductible consuming" situation such as the instant one, as a matter of law there was no detriment here, and (3) even if it could have, this insured did not allege a violation of the implied covenant in its pleadings.

We will elaborate on each of these holdings in the balance of this opinion.

## C.

■ Although we are aware of no case utilizing the principle in an insurance context, it has been held in several other contexts that the implied covenant cannot be utilized to limit or restrict an express grant of discretion in a contract to one of the parties thereto. The leading case on point is *Carma Developers (Cal.), Inc.* v. *Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 [6 Cal.Rptr.2d 467, 826 P.2d 710] (*Carma*), where our Supreme Court stated: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."

In a later Court of Appeal case, both litigants cited *Carma* to bolster their appellate positions; that court thus felt a need to interpret *Carma* and did so. Indeed, in *Third Story Music, Inc.* v. *Waits* (1995) 41 Cal.App.4th 798 [48 Cal.Rptr.2d 747], the court discussed not only *Carma* but a number of other decisions that had grappled with real or alleged conflicts between express contractual language and the implied covenant. It concluded: "The conclusion to be drawn is that courts are not at liberty to imply a covenant directly

---

[3]Although a decision by the Supreme Court of New Jersey does—see *American Home* v. *Hermann's Warehouse* (1989) 117 N.J. 1 [563 A.2d 444, 446-448].

at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement. In all other situations where the contract is unambiguous, the express language is to govern, and '[n]o obligation can be implied . . . which would result in the obliteration of a right expressly given under a written contract.' [Citation.]" (*Third Story Music, Inc.* v. *Waits, supra,* 41 Cal.App.4th at p. 808.)

We hold that this general rule, reiterated often in noninsurance appellate decisions, applies with equal force in the insurance context. ▇ The parties to this insurance contract gave the insurer the express right to settle claims and, if such settlements included the insured's deductible, to thereafter seek reimbursement from the insured. The exercise of such an express grant cannot, in our view, be limited by the implied covenant of good faith and fair dealing.

### D.

Alternatively, we hold that, even assuming the *Western Polymer* principle could conceivably pertain in a situation such as this, it does not apply here.

The insured contends, as it did below, that the settlements were made predominantly to save the costs of defense, and were not based on a true assessment of its liability exposure. Thus, it argues the insurer elevated its own interests above those of the insured. To the contrary, we conclude that this insured suffered no detriment from the insurer's actions. This is, we believe, apparent from the application of some basic principles of insurance law. Indeed, the insured appears not to recognize that if, as it claims, there is no coverage, then it may be liable not merely for the deductibles but also for the entire cost of defending the 11 claims.

▇ The law regarding an insurer's duty to defend is settled: An insurer may refuse to defend a third party claim only where the claim can " 'by no conceivable theory raise a single issue which could bring it within the policy coverage.' " (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], italics omitted (*Montrose*).) This duty attaches wherever the insurer discerns facts which gives rise to the *potential* for coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 278 [142

Cal.Rptr. 681].) Even a bare possibility of coverage is sufficient to trigger a duty to defend. (*Montrose, supra*, 6 Cal.4th at p. 300.)

██ But the other side of this coin is that, as and when it provides a defense of partially covered and partially uncovered claims, an insurer is entitled to seek reimbursement from the insured for the costs of defense of those claims which are later determined to be uncovered. Such was the holding of our Supreme Court in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*), where the court explained: "Not only is it good law that the insurer may seek reimbursement for defense costs as to claims that are not even potentially covered, but it also makes good sense. Without a right of reimbursement, an insurer might be tempted to refuse to defend an action in any part . . . . With such a right, the insurer would not be so tempted, knowing that, if defense of the claims that are not even potentially covered should necessitate any additional costs, it would be able to seek reimbursement." (*Id.* at pp. 52-53; see also *State of California* v. *Pacific Indemnity Co.* (1998) 63 Cal.App.4th 1535, 1549 [75 Cal.Rptr.2d 69].)

These same policy considerations apply equally where the claims are not "mixed" but are defended—as here—under a reservation of rights because all are potentially covered. But, as applied to the present fact situation *Buss* necessarily means that if, as the insured now contends, there is no coverage for the claims in question, the insurer had the legal right to seek reimbursement of *all* of the benefits it provided the insured, not just $50,000 of deductibles. Thus, this insured cannot establish that it suffered any detriment by the insurer's settlement of the claims in question.

██ The *Montrose* line of authority also supplies the answer to the insured's contention that the right-to-settle provisions in the policy did not apply because there was no coverage to begin with. Although this record does not (strangely, we think) include copies of letters of tender from or on behalf of the insured, clearly there were effectively 11 such tenders. In and of itself, this strongly suggests *potential* coverage. So did the substance of the claims themselves, relating as they did to both property damage via water intrusion and insured contracts coverage. And so, finally, does the fact that the insurer thereafter accepted them, albeit under a reservation of rights, and provided a defense therefor for, in some cases, several years. Given these circumstances, *Montrose* and its predecessors mean not only that this insurer had an obligation to defend, but also that, *in the course of fulfilling that obligation, it was entitled to rely on the policy terms vesting in it the*

*discretion and power to settle claims—including using the insured's deductibles to help do so.* Any other rule would mean that the insurer, while required to defend the claims because of "potential" coverage, must do so without being able to rely upon the policy's express settlement provisions. Such a result would be manifestly unfair.

If, subsequent to its tenders to the insurer and the commencement of the latter's provision of a defense, this insured concluded that, notwithstanding its tender(s), some or all of these claims were in fact not covered by the policy, it could have, among other things (1) so stated via a letter to the insurer and requested the transfer of the defense to its own counsel, (2) so stated in court and requested a substitution of counsel on that basis, (3) filed a declaratory relief action asking for a determination that there was no coverage, etc. What it cannot do, however, is have the best of both worlds, i.e., accept the benefits of the defenses provided by the insurer but, when the time comes to effect settlements of the claims (via, in part, its deductibles), then assert a lack of coverage.

For both of these reasons, it is clear from this record that, even assuming possible application of the covenant of good faith and fair dealing to this fact situation, this insured suffered no detriment by the insurer's actions.

E.

Even if breach of the covenant of good faith and fair dealing were available to the insured, we hold that it failed to allege any such defense. To be sure, it raised an "unclean hands" defense in its answer and also asserted that "as a result of plaintiff's conduct in the transaction at issue, plaintiff waived its right, if any, to assert the claims made in its complaint."

We conclude that neither of these defenses is adequate to put in issue a possible breach of the covenant of good faith and fair dealing. We recognize that, in some circumstances, an "unclean hands" defense may be asserted in an action at law. (See *Unilogic, Inc.* v. *Burroughs Corp.* (1992) 10 Cal.App.4th 612, 619-622 [12 Cal.Rptr.2d 741], and cases cited therein.) But such a defense is quite different from a plea that the implied covenant of good faith and fair dealing has been breached. The covenant is, as always, an issue of contract law, whereas unclean hands concerns the far broader question of a party's "misconduct," and generally misconduct of a tortious nature. (See *ibid.* and *Blain* v. *Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1058-1060 [272 Cal.Rptr. 250].) It is far too much of a "stretch" to hold that a plea of the latter implicates the former.

The plea of "waiver" is quasi-procedural in nature and, in general, even more remote from an allegation of breach of the implied covenant.

## IV. DISPOSITION

The trial court was correct in granting summary judgment for respondent. The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.

On December 28, 1998, the opinion was modified to read as printed above.