[No. A062964. First Dist., Div. Three. Jan. 20, 1995.]

WESTERN POLYMER TECHNOLOGY, INC., et al., Plaintiffs and Appellants, v.
RELIANCE INSURANCE COMPANY et al., Defendants and Respondents.

16

**COUNSEL**

Lieberman & Bennett and Bruce A. Lieberman for Plaintiffs and Appellants.

Crosby, Heafey, Roach & May, Stephen A. McFeely, James C. Martin and Benjamin G. Shatz for Defendants and Respondents.

## OPINION

**CHIN, P. J.**—Western Polymer Technology, Inc. (Western), and its president and principal shareholder, William D. Wright, appeal following summary judgment of their insurance bad faith action against Reliance Insurance Company and United Pacific Insurance Company (collectively Reliance).[1] Western contends that Reliance acted in bad faith by unreasonably settling a suit by third parties in a manner contrary to Western's interests, although the policy gave Reliance the right to "make such investigation and settlement of any claim or suit as it deems expedient . . . ." Western and Wright alleged that the $425,000 settlement, which was less than Western's policy's limits, injured their reputations and damaged Western's ability to recover on its cross-complaint against the third parties.

We find that Reliance did not breach the implied covenant of good faith and fair dealing when it settled the suit against Western despite Western's protests. Under the circumstances of this case and the terms of the insurance policy, Reliance's actions impaired neither the policy's benefits and purposes nor Western's interests under the policy. We affirm the judgment.

### FACTS

Western was a manufacturer and supplier of machinery used to make blown polymer film products such as sandwich bags and garbage bags. In November 1987, Western was insured under a general liability insurance policy issued by Reliance's subsidiary. The policy's coverage limits for bodily injury and property damage were $500,000 for each occurrence and for an annual aggregate. The policy expressly provided that Reliance "shall have the right and duty to defend any suit against the insured . . . even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . ."[2]

Western was sued in November 1987 by TRM Manufacturing, Inc. (TRM), and its president, Ted R. Moore (the TRM action). The TRM action sought $3.5 million in damages for breach of a sales contract and for negligence, alleging that Western had not timely delivered blown polymer film manufacturing equipment and had delivered defective equipment. The suit also sought cancellation of a $30,000 promissory note and personal

---

[1] Western was insured under a general liability policy issued by United Pacific Insurance Company, a subsidiary of Reliance Insurance Company.

[2] An "insured" under the policy included Western and, while acting in the scope of their duties, Western's executive officers, directors, and stockholders.

guarantee signed by Moore and TRM when the equipment was delivered. TRM's suit did not name Wright as a defendant.

Western tendered the defense of the TRM action to Reliance. Western's attorney, Stephen M. Bickford of the firm of Epstein & Englert, asked Reliance to assign Western's defense to him. Pending Reliance's decision on accepting the defense and appointing counsel, Bickford answered TRM's suit and cross-complained against TRM and Moore for misrepresentation and for the promissory note balance. In April 1988, Reliance appointed Bickford to defend Western under a reservation of rights by Reliance to deny coverage.[3]

During late 1990 and early 1991, Reliance's claims personnel spoke with Western's counsel and reviewed discovery and other information provided by Bickford regarding potential liability, damages, and settlement of the TRM action. By early 1991, neither TRM nor Western had completed an analysis of liability and damages or their trial preparation. On January 14, 1991, TRM's attorney served Western's counsel with an offer to compromise, pursuant to Code of Civil Procedure section 998, for payment of Western's $500,000 policy limits to TRM.

On February 22, 1991, Reliance's local assistant claims manager, Joseph Valich, and Reliance's regional examiner, Rick Willson, met with Western's counsel and reviewed the TRM action's status. After the meeting, Reliance concluded that the TRM action involved some probable liability for Western, which TRM's counsel claimed was at least $1 million and which Western's counsel preliminarily estimated as a share of an amount less than $300,000.

On February 26, 1991, Willson wrote to Western's attorney, Bickford, to inform him that Reliance had decided to negotiate a settlement with TRM's counsel, either directly or through Western's attorneys. The same day, Valich sent Willson his breakdown of TRM's damages and a request to settle the TRM action for $464,616.44. When Willson received Valich's request, he submitted to Reliance's home office a request for authority to settle the case for the $500,000 policy limits. Reliance's home office instructed Willson to resolve the case as soon as possible.

Beginning in mid-April 1991, Valich negotiated directly with TRM's attorney. Valich initially offered $282,490.12 to settle the TRM action and soon raised the offer to $350,000. During April and May 1991, Western's

---

[3]Reliance's formal, written reservation of rights was not sent to Bickford or Western until January 1991.

counsel sent to Reliance a series of updated damage and liability evaluation reports that continued to reduce the attorneys' estimates of TRM's damages. By May 20, Western's attorneys estimated that, assuming Western's liability, TRM's damages were approximately $40,000 to $60,000. Meanwhile, on May 16, Valich and TRM's attorney had agreed to settle TRM's claims against Western for $425,000.[4]

Western learned of the settlement on May 20, when TRM's counsel sent a draft settlement agreement to Western's attorney. Three days later, on May 23, Valich wrote to Bickford to inform him of the settlement. Bickford wrote a series of letters to Reliance urging reconsideration of the settlement, which he thought was excessive. TRM and Moore executed a complete release of Western on June 10, 1991, and on June 13, Valich personally delivered a $425,000 settlement check to TRM's counsel. Around this time, Western asked another attorney, Bruce A. Lieberman, to demand that Reliance not consummate the settlement before Lieberman reviewed it. Lieberman contacted Reliance and said the settlement could hurt Western's and Wright's reputations. Lieberman was told that it was too late to stop payment on the already delivered check.

Western incurred approximately $2,500 in attorney fees in the attempt to stop the settlement. However, Western was not required to contribute any money to the settlement of the claims against it in the TRM action. At the time of the settlement, Reliance was spending $30,000 to $40,000 per month on Western's defense. Reliance incurred defense costs in excess of $500,000 on Western's behalf in the TRM action.

Three months after the settlement, Western and Wright sued Reliance for bad faith in the handling of the TRM action. After conducting discovery, the parties brought cross-motions for summary judgment and summary adjudication of issues. The trial court denied Western's motion for summary adjudication and granted Reliance's motion for summary judgment. The court found, as a matter of law, that there was no evidence that Reliance breached any duty imposed by the implied covenant of good faith and fair dealing. The court also noted that Wright had not been a party to the TRM action and therefore was not a claimant under Reliance's policy. The trial court entered judgment for Reliance and, after the denial of a motion for reconsideration based on *Security Officers Service, Inc.* v. *State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887 [21 Cal.Rptr.2d 653] (*Security Officers Service*), this timely appeal followed.

---

[4]Initially, the settlement terms negotiated between Reliance and TRM called not only for the dismissal of TRM's complaint, but also for dismissal of Western's cross-complaint. However, after Western's counsel learned of the settlement terms on May 20, Western refused to agree to dismissal of its cross-complaint. The written agreement and release ultimately signed by TRM left Western's cross-complaint intact and dismissed only TRM's complaint.

## DISCUSSION

Western's appeal turns upon two issues. Western contends that after Reliance reserved a right to deny coverage and approved Western's attorney as defense counsel for the TRM action, Reliance could not exclude Western's counsel from the settlement process without violating Civil Code section 2860. Western also argues that because Reliance resolved the TRM action without regard to Western's interests, Reliance's conduct was the type of bad faith proscribed by a trio of cases: *Security Officers Service, supra,* 17 Cal.App.4th 887; *Barney v. Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 [230 Cal.Rptr. 215] (*Barney*); and *Rothtrock v. Ohio Farmers Ins. Co.* (1965) 233 Cal.App.2d 616 [43 Cal.Rptr. 716] (*Rothtrock*).

Wright's appeal rests upon a novel extension of the principle that an insurer must defend its insured when a suit potentially seeks damages within the policy's coverage. (See, e.g., *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].) Wright argues that Reliance should have considered his interests as an insured, even though he was not sued by TRM, because TRM could have amended its action to make him a defendant.

Reliance responds that the implied covenant of good faith and fair dealing should not be used to grant rights inconsistent with the terms of the insurance contract. Reliance also argues that Western's three case authorities are distinguishable and do not support the broad rule urged by Western, which Reliance maintains is unworkable. With respect to Wright's appeal, Reliance notes that because Wright was not sued by TRM, he needed neither defense nor indemnity, the benefits provided by the policy. As a result, Reliance concludes that Wright cannot sue for an alleged bad faith failure to provide those benefits.

### Civil Code Section 2860

Civil Code section 2860 is the Legislature's codification of the decision in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1394 [25 Cal.Rptr.2d 242].) Under that section, an insurer must provide independent counsel to represent the insured when there is a conflict of interest between the insured and the insurer. (Civ. Code, § 2860, subd. (a).) Such a conflict of interest may arise when the insurer reserves its rights on an issue and the outcome of the coverage issue can be controlled by the way the insured's counsel defends the case. (See *Golden Eagle Ins. Co., supra,* 20 Cal.App.4th

at p. 1395; Civ. Code, § 2860, subd. (b).) In the present case, Reliance had issued a reservation of rights to deny coverage and paid for Western's defense by independent counsel.

Subdivision (f) of Civil Code section 2860 reads, in its entirety: "(f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract."

■ Western contends that Reliance excluded Western's independent counsel from the settlement negotiations with TRM. This, Western insists, constituted bad faith as a matter of law because Reliance intentionally breached a statutory duty owed to Western under Civil Code section 2860, subdivision (f). Reliance contends that the statute should not be extended beyond its terms so as to give the insured control over the insurer's contractual right to settle a claim.

We find that under the facts of this case, Reliance did not violate Civil Code section 2860, subdivision (f). First, we note that the statute says only that "both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to *participate* in all aspects of the litigation." (Civ. Code, § 2860, subd. (f), italics added.) The language that the Legislature employed does not accommodate the result Western desires. Instead, the provision appears to assure that when an insured is represented by both insurer-appointed and independent counsel, neither counsel will be precluded from having a voice in the proceedings. Moreover, neither the statute nor case law suggests that independent counsel's control of the insured's defense extends to preventing the insurer from exercising its contractual right to settle a claim as the insurer deems expedient. If the Legislature intended the section to have such an effect, i.e., to abridge the insurer's contractual right to settle, it would have used appropriate language.

Second, although Western's counsel did not negotiate the amount to be paid to TRM, he did participate in the settlement process by assuring that the final agreement preserved Western's right to proceed with its cross-complaint. Indeed, Western's counsel redrafted the final settlement document to

that end.[5] Prior to the settlement, Western's counsel informed Reliance of his assessment of the strengths and weaknesses of TRM's claims, his estimates of Western's liability exposure, and his evaluation of the prospects for settlement. Western's counsel also made known Western's objections to the settlement and its perceived generosity. To say that under the circumstances Reliance was obliged to accede to Western's counsel's advice as well, or face liability for bad faith, would give "participate," as used in the statute, a sense of coercive capability that the word simply does not bear. Consequently, we find that Reliance did not violate Civil Code section 2860, subdivision (f).

### Bad Faith Settlement

Western's argument that Reliance is liable for bad faith in settling the TRM action begins with the unusual assertion, for an insured, that the insurer had no duty to settle because there was no likelihood that Western would be exposed to a judgment that exceeded its policy's limits. The argument is based upon the rules used to determine an insurer's liability for bad faith when it unreasonably *refused* a settlement offer within its policy's limits. (See, e.g., *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 916-917 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659-661 [328 P.2d 198, 68 A.L.R.2d 883]; *Walbrook Ins. Co.* v. *Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1453-1454 [7 Cal.Rptr.2d 513].) Western then proceeds to argue that application of these rules shows that Reliance acted in bad faith because it unreasonably *accepted* a settlement offer within its policy limits.

We cannot accept Western's indiscriminate transfer of rules that address one problem—insurers which wrongfully expose their insureds to excess liability by unreasonably refusing settlements—to a context completely foreign to the rules' origins. Such exercises produce unworkable standards. Instead, we use fundamental principles that govern claimed breaches of the implied covenant of good faith and fair dealing.

---

[5]In this regard, we note the following allegations of Western's verified first amended complaint: "In or about May, 1991, Reliance notified the Epstein Firm of its settlement communications with counsel for TRM. Thereafter, the Epstein Firm participated in and assisted Reliance with Reliance's efforts to settle the TRM action." A complaint's factual allegations constitute judicial admissions that may be relied on to establish an undisputed fact for summary judgment. (*Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217, 222, fn. 3 [31 Cal.Rptr.2d 525] review den. Oct. 20, 1994.) Although we do not rely on this admission for our decision, we are reassured to find that Western once agreed that its counsel participated in the settlement process.

■ The scope of the implied covenant of good faith and fair dealing depends on the contractual purposes. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 684 [254 Cal.Rptr. 211, 765 P.2d 373]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) The parties to the insurance contract must refrain from doing anything that will injure the right of another party to receive the benefits of the agreement. (*Egan, supra,* 24 Cal.3d at p. 818; *Security Officers Service, supra,* 17 Cal.App.4th at pp. 895-896.) The terms and conditions of the policy define the duties and performance to which the insured is entitled. (See *Camelot by the Bay Condominium Owners' Assn.* v. *Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 52 [32 Cal.Rptr.2d 354].)

■ Here, Western's policy gave Reliance the right to "make such investigation and settlement of any claim or suit as it deems expedient . . . ." This type of clause is not unusual in liability insurance policies. (44 Am.Jur.2d (rev.) Insurance, § 1393, pp. 326-327.) ■ In general, the insurer is entitled to control settlement negotiations without interference from the insured. (See *Commercial Union Assurance Companies* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 919; *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 660 [320 P.2d 140]; *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 684-685 [319 P.2d 69, 66 A.L.R.2d 1202].) As a result, an insurer normally cannot be liable to the insured if the insurer does no more than settle a claim or suit within the policy's limits. (See Annot., Liability of Insurer to Insured for Settling Third-Party Claim Within Policy Limits Resulting in Detriment to Insured (1994) 18 A.L.R.5th 474.)

There are limits, though, to the latitude afforded insurers in effecting settlements pursuant to "deems expedient" clauses and those of similar import. *Ivy* v. *Pacific Automobile Ins. Co., supra,* 156 Cal.App.2d 652, provides an example of an insurer's exceeding those limits. The appellate court found the insurer had violated the duty to act in good faith by stipulating, without the insured's knowledge or consent, to a judgment that exceeded the policy limits. (*Id.,* at pp. 660-663.) Although the insurer obtained a covenant not to execute against the insured on the stipulated judgment, the insured was not fully protected, because the covenant did not bind assignees of the judgment, and the judgment impaired the insured's credit. (*Id.,* at pp. 662-663.) The circumstances of the *Ivy* case present an instance where the insurer protected its own interests first and, as a result, damaged interests of the insured that the policy was supposed to protect, thus denying him the benefits and frustrating the purposes of his liability insurance.

Similarly, two California decisions relied on by Western established circumstances under which an insurer could be liable for bad faith when

settling a claim against the insured within policy limits. In *Rothtrock, supra,* 233 Cal.App.2d 616, the insurer settled a property damage claim arising out of an automobile collision, but did so by means that barred an insured's claim for personal injuries from that collision. (*Id.,* at pp. 618-620.) The appellate court concluded that the insurer could be liable to the insured because the insurer knew about the personal injury claim and had no legal right to compromise the insured's claim. (*Id.,* at p. 623.) The court based its decision on the rule that although an attorney has the power to bind the client, the attorney cannot, without the client's knowledge or consent, compromise the client's claim for reasons foreign to the client's best interests or substantial rights. (*Ibid.*)

*Rothtrock*'s circumstances were later echoed in *Barney, supra,* 185 Cal.App.3d 966. The insurer settled an automobile accident complaint against the insured in a manner that foreclosed the insured's own claim for personal injuries. (*Id.,* at pp. 974-975.) The insured alleged that the insurer knew the settlement would bar the insured's personal injuries claim, yet effected the settlement without the insured's knowledge or consent.[6] (*Id.,* at pp. 974-975.)

The appellate court noted the rule that a duty of good faith and fair dealing follows upon a contractual provision that gives one party a discretionary power to affect the rights of another party. (*Barney, supra,* 185 Cal.App.3d at p. 974.) From this rule the court derived its statement that the insurer had a duty not to use its discretionary claim settlement power in a way that it knew would injure the insured's rights. (*Id.,* at p. 978.) The insurer argued that protecting the insured's claims against others was not a policy right subject to the implied covenant of good faith and fair dealing. The court responded that "[t]he insured can hardly be said to have received any benefit from the policy of insurance if that benefit is totally voided by a countervailing detriment imposed upon him by the insurer without his consent." (*Id.,* at p. 977.)

More recently, *Security Officers Service, supra,* 17 Cal.App.4th 887, found that a workers' compensation insurer had a duty to use good faith in investigating, defending, setting claims reserves, and settling claims, when those activities directly influenced the insured's premiums and potential dividends under the policy. (*Id.,* at pp. 890, 898.) Under the policies in that case, the insured's premiums and dividend rights depended, in part, on the insured's loss experience rating, which could be modified because of the

---

[6]Because *Barney* was an appeal from a judgment on the pleadings, the appellate court accepted as true the facts alleged by the insured's complaint. (*Barney, supra,* 185 Cal.App.3d at pp. 973-974.)

number of claims outstanding at year-end and the reserves the insurer established for those outstanding claims. (*Id.*, at p. 891.) The insured alleged that the insurer unjustifiably allowed claims to remain unresolved and unreasonably inflated the claims' reserves, which increased the insured's premiums to unwarranted levels. (*Id.*, at pp. 895-896.)[7]

The insurer argued that a duty to adjust claims in good faith conflicted with its policy right to control the defense and settlement of claims without interference, and that the covenant of good faith should not be construed to take away the policy's express terms. (*Security Officers Service, supra,* 17 Cal.App.4th at p. 895.) The court rejected that argument by stating the established limitation on insurers' settlement discretion: "[W]hen resolution of a claim may adversely affect the policyholder in the enjoyment of the policy's benefits and purposes, the insurer becomes obligated, by the implied covenant, to pursue defense and settlement with due, good faith regard to the insured's interests." (*Id.*, at pp. 895-896.)

Each of these cases can be seen as facets of the same principle. An insurer cannot unreasonably refuse to settle within policy limits and thus gamble with its insured's money to further its own interests. (See *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 431 [58 Cal.Rptr. 13, 426 P.2d 173].) Similarly, an insurer should not further its own interests by settling a claim within policy limits through the use of the insured's money without some form of consent by the insured. This, in effect, is what happened in *Rothtrock* and *Barney*, where the insurers' settlements eliminated the insureds' chances for compensation for their personal injuries, and in *Security Officers Service*, where the insurer's claims adjustment practices allegedly resulted in an increase in premium revenue from the insured. In each of these cases, the implied covenant of good faith and fair dealing protects the insured's enjoyment of the policy's benefits and purposes and avoids impairing the insured's interests under the policy.

The interests that Western asserts Reliance impaired by settling the TRM action are not protected by the implied covenant of good faith and fair

---

[7]The *Security Officers Service* court noted, " 'in general, an insurance company is given broad discretion in adjusting claims as long [as] the settlement does not exceed policy limits. [Citation.] However, the general rule is irrelevant here, where the policy limits are not a set figure. When an insurance policy contains a retrospective premium feature, an insurer's failure to act reasonably when adjusting claims automatically subjects the insured to greater financial obligations in the form of increased premium rates.' [Citation.]" (*Security Officers Service, supra,* 17 Cal.App.4th at p. 897, quoting *National Sur. Corp.* v. *Fast Motor Serv.* (1991) 213 Ill.App.3d 500 [157 Ill.Dec. 619, 572 N.E.2d 1083, 1087].)

dealing.[8] Western contends that the settlement injured its business reputation. However, a liability insurance policy's purpose is to provide the insured with a defense and indemnification for third party claims within the scope of the coverage purchased, and not to insure the entire range of the insured's well-being. (See *Camelot by the Bay Condominium Owners' Assn.* v. *Scottsdale Ins. Co.*, *supra*, 27 Cal.App.4th at p. 52.) At least where the policy does not require the insured's consent to a settlement, there appears to be no precedent for holding an insurer liable for injury to an insured's reputation as a result of the settlement of a third party claim. (See Annot., *supra*, 18 A.L.R.5th at pp. 492-503.) This is not surprising, because the policy language informs the insured that the insurer may settle "as it deems expedient" any claim or suit, even if the suit's allegations are "groundless, false or fraudulent . . . ." No reasonable reading of this language would create an expectation that the insurer has to forgo settlement in favor of vindicating the insured's reputation.

Western also contends that the settlement injured its ability to pursue its cross-complaint against TRM. However, the record is clear that Western retained its right to proceed with its cross-complaint after the settlement. The settlement document specified that Western denied any liability and that the payment to TRM was not to be construed as an admission in any context. Western offered no evidence in the trial court to show that the settlement had any effect on the prosecution of the cross-complaint.[9]

Western's slender claims of impaired interests differ in kind and character from the actionable injuries recognized in *Rothtrock*, *Barney* and *Security Officers Services*. We decline to extend the rule in those decisions to include Western's claims, because that would place insurers in an untenable position. Insurers already must face bad faith liability for unreasonably refusing a settlement offer within their policy limits. (See *Crisci* v. *Security Ins. Co.*, *supra*, 66 Cal.2d at pp. 430-431.) Under Western's extension of potential

---

[8]Western included among the damaged interests the alleged erosion of its policy limits and the effect on its future insurability. However, there was no evidence that there ever was any other claim to which those limits would apply or that Western's insurability was affected. Accordingly, we do not address what obligations an insurer might owe an insured under such circumstances.

[9]Western suggests that Reliance's payment should be presumed to have informed TRM's counsel that Reliance believed the cross-complaint had no merit. We find no basis in the record for such a presumption. Western also asks that we take judicial notice "that the very fact of the settlement operated to create a war chest for TRM's further defense of the cross-complaint . . . ." We decline to do so.

bad faith liability to include Reliance's settlement with TRM, liability insurers always would be faced with a dilemma as to settlements. The insurers' only safe course would be to have their insureds' written consent to settlements. The result of adopting Western's argument would be a judicial fiat excising insurers' contractual right to control settlements, a result we cannot accept.

### Wright's Appeal

In addition to finding that Reliance breached no duty under the implied covenant, the trial court granted summary judgment on Wright's claim against Reliance because Wright was not a party to the TRM action and a claimant under the policy. ■ Wright claims error because he was an "insured" under the policy as an executive officer and shareholder of Western.

Wright proceeds from the premise that he was an insured under the policy to argue that Reliance was obliged to consider his interests in settling the TRM action. Wright bases this conclusion on an extension of the familiar rule that an insurer has a duty to defend an insured when a suit potentially seeks damages within the policy's coverage. (See, e.g., *Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at pp. 275-277.) Wright contends that TRM could have amended its action to name him as a defendant or sought to enforce any judgment against him as Western's alter ego. Thus, Wright suggests that an insured who is only a potential defendant is owed the same panoply of defense duties as an insured who is actually sued.

The flaw in Wright's argument is found in the promise that the insurer made to the insured: "the company shall have the right and duty to defend any suit against the insured . . . ." There was no suit against Wright. Therefore, Reliance did not owe a duty to defend Wright in a suit to which he was not a party. Whether Wright satisfied the policy's definition of an "insured" is irrelevant as an abstract question. Unless Wright was sued, the policy imposed no obligations on Reliance in Wright's favor as an individual. The mere possibility that TRM might have amended its complaint to add Wright as a defendant does not change the nature of Reliance's duties under the policy. Under the terms of Reliance's policy, the insurer has no duty to defend someone who is not a defendant.

## DISPOSITION

The judgment is affirmed.

White, J.,* and Merrill, J., concurred.

A petition for a rehearing was denied February 10, 1995, and appellants' petition for review by the Supreme Court was denied April 13, 1995.

---

*Retired Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.