Filed 9/13/24  Grundfor v. Demarest CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DREW B. GRUNDFOR, | 2d Civil No. B329142 |
| | (Super. Ct. No. 19CV-0105) |
| Plaintiff and Appellant, | (San Luis Obispo County) |
| v. | |
| JOHN DEMAREST et al., | |
| Defendants and Respondents. | |

Drew B. Grundfor rear-ended a car driven by N.M.  His blood-alcohol content was thrice the legal limit at the time. Allstate, Grundfor's insurer, retained attorney John Demarest and the law firm of Hanger Steinberg Shapiro & Ash (collectively, Respondents) to settle the civil lawsuit N.M. and her passengers brought against Grundfor after the collision.  The settlement paid out the entirety of Grundfor's policy liability limit.

After Grundfor was ordered to pay N.M. restitution in a subsequent criminal proceeding, he sued Respondents for negligence.  The trial court granted Respondents' motion for

summary judgment. Grundfor contends the judgment should be reversed because the court erred in concluding that Respondents had no duty to protect him from exposure to criminal restitution when settling the civil lawsuit. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Grundfor was listed as an insured driver on an automobile insurance policy with Allstate. The policy covered up to $500,000 in damages for bodily injury per occurrence. The policy permitted Allstate to "settle any claim or suit if [it] believe[d] it [was] proper." It did not require Allstate to pay for the criminal defense of an insured, and stated that the company would not pay for "damages [that] an insured person [was] legally obligated to pay because of [¶] . . . [¶] bodily injury or property damage [that] may reasonably be expected to result from the . . . criminal acts of" that person.

In December 2014, Grundfor rear-ended a car driven by N.M. There were three other passengers in the car, including N.M.'s minor daughter, K.H. Grundfor's blood-alcohol content was more than three times the legal limit at the time of the collision.[1]

Seven months later, N.M. filed a civil lawsuit against Grundfor on behalf of herself and the other three passengers in her car at the time of the collision. Allstate hired Respondents to defend Grundfor in the suit.

---

[1] Grundfor pleaded no contest to driving under the influence and injuring another person (Veh. Code, § 23153, subd. (b)), and admitted allegations that he had a blood-alcohol content in excess of 0.20 percent (*id.*, § 23556, subd. (b)(4)), injured more than one person (*id.*, § 23558), and suffered a prior conviction for driving under the influence (*id.*, § 23560).

In March 2016, the parties agreed to settle N.M.'s lawsuit. The settlement required Allstate to pay out the entire $500,000 of Grundfor's policy liability limit in exchange for the dismissal of N.M.'s suit. Grundfor was not a signatory to the settlement.

In July 2017, N.M. requested $178,000 in restitution from Grundfor in the parallel criminal proceeding against him for attorney fees she incurred in her civil lawsuit. The trial court ordered Grundfor to pay the requested amount in February 2018. We affirmed the restitution order on appeal. (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 31 (*Grundfor*).)

In February 2019, Grundfor sued Respondents for negligence. He alleged Respondents should have either: (1) extinguished his liability for criminal restitution by including language in the settlement that made clear it included reimbursement for N.M.'s attorney fees and costs in her civil lawsuit, or (2) conditioned the settlement on the trial court's confirmation that it resolved any claim for criminal restitution. Respondents moved for summary judgment, arguing that Grundfor's lawsuit was filed outside the applicable statute of limitations (citing Code Civ. Proc.,[2] § 340.6). They also argued Grundfor could prove neither the duty nor the causation elements of his negligence claim.

The trial court granted Respondents' motion, concluding they had no duty to structure the settlement with N.M. in a manner that extinguished Grundfor's potential liability for criminal restitution. Grundfor's policy provided no coverage for criminal liability, and there was "no legal authority to suggest that an insured has a right to have [their] insurance carrier

---

[2] Further unlabeled statutory references are to the Code of Civil Procedure.

3

insulate [them] from liability for criminal restitution. . . . [S]uch an expansion of duty would be inconsistent with the deterrent and rehabilitative goals of criminal restitution." Nor did Respondents "owe [Grundfor] a duty to consult with the criminal court, or to structure the [c]ivil [s]ettlement so as to extinguish [his] obligation for criminal restitution."

## DISCUSSION

Grundfor contends the trial court erred when it concluded that Respondents had no duty to protect him from liability for criminal restitution and granted their motion for summary judgment. We disagree.

### *Standard of review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) The defendant bears the initial burden of showing that the plaintiff cannot establish one or more elements of the cause of action, or that there is an affirmative defense to it. (§ 437c, subd. (o); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the defendant makes one of the required showings, the burden shifts to the plaintiff to establish a triable issue of material fact. (*Aguilar*, at p. 850.)

Our review is de novo. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) We liberally construe the opposing party's evidence and resolve all doubts in their favor. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We consider all evidence in the moving and opposition papers, except that to which objections were properly sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

4

*Analysis*

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence [therefore] depends as a threshold matter on the existence of a legal duty of care. [Citation.]" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).)

"Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' " (*Brown*, *supra*, 11 Cal.5th at p. 213.) Stated differently, "the law imposes a general duty of care on a defendant only when it is the defendant who has ' "created a risk" ' of harm to the plaintiff." (*Id*. at p. 214.) "The law does not impose the same duty on a defendant who did not contribute to the risk that the plaintiff would suffer the harm alleged." (*Ibid*.)

"The no-duty-to-protect rule is not absolute, however; [the Supreme Court] has recognized a number of exceptions. [Citation.] Under some circumstances, a defendant may have an affirmative duty to protect the plaintiff from harm at the hands of a third party, even though the risk of harm is not of the defendant's own making. [Citations.] For example, . . . a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm. [Citations.]" (*Brown*, *supra*, 11 Cal.5th at p. 215.)

"A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant . . . . [Citation.] . . . The existence of such a

5

special relationship puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this position accordingly. [Citation.]" (*Brown*, *supra*, 11 Cal.5th at p. 216.) But "[w]here the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm, . . . the defendant owes no legal duty to the plaintiff." (*Ibid.*)

Here, we conclude Respondents owed no legal duty to Grundfor to extinguish his criminal restitution liability. Respondents were hired to defend Grundfor in N.M.'s civil lawsuit, and they settled the lawsuit for Grundfor's full policy limits. While Grundfor claims that N.M. was "ready and willing to negotiate" her criminal restitution claim, there was no criminal restitution claim pending as of the settlement date. Nor is there any evidence that N.M. would have agreed to itemize her attorney fees and costs when structuring the settlement to offset her future criminal restitution.

Additionally, Grundfor put forth no evidence that Respondents performed an act that increased his risk of injury. The injury he claims—exposure to criminal restitution—was caused by his own act of injuring several motorists while driving intoxicated. That exposure existed before Respondents settled N.M.'s civil lawsuit, and it existed after. Nothing Respondents did changed that in any way.

Grundfor also put forth no evidence that Respondents had an affirmative duty to protect him beyond defending against N.M.'s civil lawsuit and paying out the entire $500,000 of his policy liability limit. "[A] liability insurance policy's purpose is to provide the insured with a defense and indemnification for third

6

party claims within the scope of the coverage purchased, *and not to insure the entire range of the insured's well-being*." (*Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal.App.4th 14, 27, italics added.) Here, Grundfor's policy with Allstate was limited to defending him from civil liability. Respondents fully performed their duties under that policy, resolving N.M.'s lawsuit within policy limits. (See, e.g., *Pinto v. Farmers Insurance Exchange* (2021) 61 Cal.App.5th 676, 688 [when there is risk of recovery beyond policy limits, insured's interests may require insurer to settle claim within policy limits].)

Moreover, as a crime victim, N.M. was entitled to (and did) seek restitution for attorney fees she incurred to "recover[] . . . damages [she] suffered as a result of [Grundfor's] criminal conduct." (*People v. Fulton* (2003) 109 Cal.App.4th 876, 883-884; see also Pen. Code, § 1202.4, subd. (f)(3)(H) ["[a]ctual and reasonable attorney's fees" recoverable as restitution].) And Grundfor points to nothing in the record to support his claim that N.M. would have structured her settlement in a way to offset future criminal restitution. Doing so would run counter to N.M.'s financial interest and require her to relinquish her constitutional rights as a crime victim. (See Cal. Const. art. 1, § 28, subd. (b)(13)(B).)

We also reject Grundfor's contention that Respondents could have structured the settlement so that N.M. would expressly waive her right to restitution but condition the civil settlement on the approval of the criminal court. A civil settlement is between the victim and the defendant, but a "restitution order [is] between [the defendant] and the state." (*Grundfor, supra*, 39 Cal.App.5th at p. 28.) "While the release

7

may [relieve the defendant] from further *civil* liability, it [does] not relieve [them] from paying *criminal* restitution." (*Ibid*.) Thus, a civil settlement "could no more 'release [a defendant] from [their] financial debt to the state any more than it could terminate [their] prison sentence.'" (*Ibid*.)

Grundfor complains that Respondents' duty was broader than simply defending him against civil liability—i.e., that they had an obligation to protect him from financial liability in a separate criminal lawsuit. But he points to nothing in his Allstate policy that would have required Respondents to do so. The language of the policy prevents Respondents from structuring the settlement in such a way: It excepted Allstate from paying for "damages [that] an insured person [was] legally obligated to pay because of . . . bodily injury or property damage [that] may reasonably be expected to result from the . . . [insured's] criminal acts."

We also do not read the cases on which Grundfor relies— *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930 (*Janik*) and *Nichols v. Keller* (1993) 15 Cal.App.4th 1672—as imposing Grundfor's proffered duty to extinguish his liability for restitution resulting from his criminal conduct. These cases discuss an attorney's duty to advise a client of potential affirmative claims arguably outside the scope of their retention. (*Janik*, at p. 940; *Nichols*, at pp. 1686-1687.) That is different than imposing on an attorney a duty to protect a client from claims unquestionably outside the scope of their representation. That *can* be limited by a retention agreement. (*Janik*, at p. 940; see, e.g., *State Farm Fire & Cas. Co. v. Superior Court* (1987) 191 Cal.App.3d 74, 77-78 (*State Farm*) [insurance company had no duty to defend client against attempted murder and assault

8

charges]; *Jaffe v. Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 933-936 [insurance company had no duty to defend doctor against fraud and theft charges].)

Additionally, as the trial court recognized, imposing on Respondents the duty to structure Allstate's civil settlement with N.M. in a manner that would shield Grundfor from liability for criminal restitution would undermine restitution's goals of rehabilitation and deterring future criminality. (See *People v. Bernal* (2002) 101 Cal.App.4th 155, 161-162 [discussing goals of restitution].) As we stated previously, " ' "[r]estitution 'is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm [their] actions have caused.' " ' " (*Grundfor, supra,* 39 Cal.App.5th at pp. 28-29.) It is this " ' " 'direct relation between . . . harm and . . . punishment [that] gives restitution a more precise deterrent effect than a traditional fine.' " ' " (*Id.* at p. 29.) As such, "[n]o conceivable justification exists for allowing an individual to pass on such liability to an insurance carrier." (*State Farm, supra,* 191 Cal.App.3d at p. 78.)

We accordingly conclude that Respondents had no duty to absolve Grundfor's criminal restitution liability in the civil settlement with N.M.[3] The trial court properly granted their motion for summary judgment.

---

[3] Because we conclude Respondents owed Grundfor no legal duty of care, we need not consider his objections to Demarest's declaration. (See *Janik, supra,* 119 Cal.App.4th at p. 936 [existence of duty a legal question].) We also do not consider Respondents' additional arguments in support of the judgment.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


CODY, J.

Rita Federman, Judge

Superior Court County of San Luis Obispo

_____

Tardiff Law Offices and Neil Tardiff for Plaintiff and Appellant.

Nemecek & Cole and Kenny C. Brooks for Defendants and Respondents.