Filed 11/5/25  Watson v. Bevins CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOSEPH C. WATSON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KEVIN BEVINS et al., <br><br> Defendants and Respondents. | B337961 <br><br> (Los Angeles County Super. Ct. No. 22STCV13181) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

Keiter Appellate Law, Mitchell Keiter for Plaintiff and Appellant.

Collins + Collins, Robert H. Stellwagen, Megan K. Lieber and James C. Jardin for Defendant and Respondent Michael Cody.

Messner Reeves, Andrew S. Hollins and Paul Hesse for Defendants and Respondents Truck Insurance Exchange, Kevin Bevins and Kathleen Baxter-Walker.

This is an appeal from a judgment following an order granting summary judgment. Plaintiff/appellant Joseph Watson was a board member of a homeowner's association (HOA) and represented the association as its attorney. Watson filed a lawsuit against Nathaniel Pickett for failing to pay HOA dues; Pickett countered by filing his own lawsuit against Watson and others. Watson tendered his defense in the action filed by Pickett to defendant/respondent Truck Insurance Exchange (Truck), the insurer of the HOA. Attorneys and defendants/respondents Kevin Bevins, Kathleen Baxter-Walker, and Michael Cody represented Watson in the matter. The case ultimately settled with Pickett receiving $160,000 from the insurance company; Watson was released with no admission of liability and suffered no out of pocket loss.

Watson was dissatisfied with the representation he received in the case and filed a lawsuit against Truck and the attorneys. The gravamen of Watson's complaint was that, in Pickett's action against him, Watson's lawyers should have filed a motion for judgment on the pleadings (MJOP) as it would have dismissed him from the lawsuit more quickly and preserved his business reputation as an arbitrator with the Financial Industry Regulatory Authority (FINRA).

Defendants' motion for summary judgment was granted and judgment was entered in favor of defendants. Watson challenges that ruling on appeal. We hold defendants had no duty to file a MJOP and affirm the judgment.

# I. BACKGROUND

## A. *The Underlying Actions*

The litigation began with a 2016 complaint filed in San Bernardino County by Joseph Watson, as counsel for an HOA, against respondent Nathaniel Pickett alleging the failure to pay HOA dues. Pickett filed a cross-complaint against Watson and the HOA; he ultimately dismissed the cross-complaint but, in July 2018, he filed a new action against Watson, the HOA, and others. With respect to Watson, the 2018 complaint alleged breach of fiduciary duty and conversion; it was amended (but not with respect to the causes of action) in November 2018. On March 8, 2019, Watson's demurrer to the first amended complaint was overruled. A second amended complaint was filed on February 28, 2020; again, the allegations against Watson remained the same.

Watson filed a cross-complaint (representing himself) in Pickett's 2018 action; he alleged breach of contract, breach of fiduciary duty, and conversion. He then tendered his defense in the action filed by Pickett to Truck, the HOA's insurance carrier. Truck assigned the defense to in-house attorneys Kevin Bevins and Kathleen Baxter-Walker. Bevins was the lead; his firm consisted of employees of Farmers Insurance Exchange (Farmers)—the company that managed claims on behalf of Truck. Watson was told that all attorneys and staff in Bevins's firm were employees of Farmers. He was advised, in writing, that the insurance company had the authority to make settlement offers and settle the lawsuit filed against him.

On June 29, 2021, Pickett filed a MJOP on Watson's cross-complaint. The hearing was calendared for August 18, 2021, but

was ultimately continued to September 29, 2021. On August 12, 2021, after Watson filed his opposition, he instructed Bevins not to file a MJOP on Pickett's complaint because he believed it would undermine his cross-complaint. Six days later, Watson reversed course and instructed Bevins to file a MJOP in time to be heard on September 29, 2021. According to Watson's declaration in support of his opposition to the summary judgment motion, Baxter-Walker informed him that the MJOP was not filed because it "would not be meritorious."

On the hearing date, the San Bernardino County Superior Court granted Pickett's MJOP as to Watson's claims for breach of fiduciary duty and conversion but denied it on the breach of contract claim. The notice of ruling does not explain the court's rationale and a copy of the reporter's transcript of the proceedings is not part of the appellate record.[1] In September 2021 Truck retained outside counsel (Michael Cody) because Watson claimed he had a "conflict" with in-house counsel assigned to his case. On November 17, 2021, at the direction of Truck, Cody filed a substitution of attorney and became Watson's attorney.

---

[1] In the introduction section of his opening brief, Watson asserts the arguments that supported Pickett's MJOP would have also supported a MJOP filed by Watson. Because we do not have a transcript of Pickett's MJOP proceedings and have no information regarding the rationale of the San Bernardino County Superior Court, we are not inclined to jump to that conclusion. In addition, Watson's point is not developed in the argument section of his brief. (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1240–1241 [an appellate court is not required to consider an undeveloped argument].)

4

On January 10, 2022, the trial court bifurcated the 2016 action from the 2018 action. It acknowledged Watson was dismissed from the 2016 action in 2017. The surviving aspects of the 2016 action were set for trial on April 11, 2022, while the 2018 matter was set for trial setting conference for that same date. The court ordered there would be no additional discovery and that it would not entertain any other dispositive motions. Later that day, Watson emailed Cody and suggested Cody file a MJOP. Three months later, before the trial setting conference, the 2016 and 2018 cases settled; Truck paid $160,000 in exchange for the release of Watson and others. The release provides that it "shall never at any time or for any purpose be considered an admission of liability or responsibility on the part of any of the parties herein released."

## B.    *Summary Judgment*

In April 2022, Watson filed a complaint against Truck, Cody, Bevins, and Baxter-Walker alleging misconduct, negligence, and intentional infliction of emotional distress. The complaint was based on what Watson believed to be poor legal representation in the 2018 San Bernardino County case filed against him. Two motions for summary judgment were filed—one by Cody and another by the other defendants. An opposition and replies to the opposition followed. The trial court granted the motion on December 13, 2023.

## II. DISCUSSION

A party is entitled to summary judgment if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) [2] "'A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. [Citation.] The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim. [Citations.] To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. [Citation.]'" (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 962; see also § 437c, subd. (p)(2).)

"Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. [Citations.] 'In deciding whether a plaintiff has met h[is] burden of proof, we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant.' [Citation.]" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.) "[T]he court must consider all admissible evidence on the motion, except that to which objections have been sustained, and 'all inferences reasonably deducible' therefrom, except that summary judgment may not be granted based on such inferences if they are contradicted by other

---

[2] Further statutory references are to the Code of Civil Procedure.

6

inferences or evidence that raises a triable issue of fact. [Citation.]" (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 352–353.) "'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." [Citation.]'" (*Carlsen v. Koivumaki*, *supra*, 227 Cal.App.4th at p. 889.)

"We independently review an order granting summary judgment. [Citation.] We determine whether the court's ruling was correct, not its reasons or rationale. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.] We review for abuse of discretion any evidentiary ruling made in connection with the motion. [Citation.]" (*Shugart v. Regents of the University of California* (2011) 199 Cal.App.4th 499, 504–505.)

### A.      No Duty to File a MJOP

"Where the injury is suffered by reason of an attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract. [Citations.]" (*Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1022–1023; see also *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1159–1160; *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, 346–349; *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 428–429.)

We agree with defendants that all three of Watson's causes of action sound in legal malpractice. The complaint begins, "the crux of this lawsuit is that [d]efendants had the duty to protect and defend [plaintiff] . . . but [d]efendants here willfully and

7

intentionally refused to file a Motion for Judgment on the Pleadings . . . that would have resulted in [plaintiff] being dismissed as a [d]efendant altogether." Indeed, all three causes of action have the same factual foundation, i.e., defendants caused harm (whether intentionally or negligently) to Watson because they failed to file a MJOP.

In the cause of action for wanton/reckless misconduct,[3] Watson alleged, "Defendants willfully wantonly, or recklessly" breached their duty to "competently represent" Watson. The claim stated, "Defendants acted with actual knowledge that if they had filed the MJOP on behalf of [Watson], then [Watson] would have been dismissed altogether . . . ." To support negligence, Watson incorporated the paragraphs supporting the cause of action for misconduct and specified that defendants, in their legal representation of him, "breached their legal duty of care owed to [Watson]." In claiming intentional infliction of emotional distress, Watson "incorporate[ed]" the factual underpinnings of the other causes of action and alleged defendants conduct was intentional and caused extreme emotional distress. In sum, the legitimacy of the complaint stood or fell on whether defendants had a duty to file an MJOP on plaintiff's behalf.[4] As Watson himself pointed out in the first

---

[3] "'[W]anton' or 'reckless' misconduct . . . describes conduct by a person who may have no intent to cause harm, but who intentionally performs an act so unreasonable and dangerous that he or she knows or should know it is highly probable that harm will result. [Citations.]" (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754, fn. 4.)

[4] Watson disagrees with this characterization of his complaint. He spends a good portion of his opening brief arguing

sentence of his opposition to summary judgment, the "entire [summary judgment] [m]otion" hinged on the question of "Why didn't [defendants], file a MJOP in [the 2018 case] on Mr. Watson's behalf . . . ?"

Legal malpractice exists when an attorney breaches his or her duty to the client and that breach proximately causes an actual loss or damage to the client. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.) An attorney's duty is "to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise . . . ." (*Ibid*.) "The attorney is not liable for every mistake he may make in his practice; he is not, in the absence of an express agreement, an insurer of the soundness of his opinions . . . ; and he is not liable for being in error as to a question of law on which reasonable doubt may be entertained by well-informed lawyers. [Citations.]" (*Kirsch v. Duryea* (1978) 21 Cal.3d. 303, 308 .) Latitude is to be given to attorneys in their selection of competing strategies. (*Id*., at p. 309.) An attorney "is not liable for an informed tactical choice within the range of reasonable competence." (*Barner v. Leeds* (2000) 24 Cal.4th 676, 690.)

---

that the causes of action are akin to the breach of a fiduciary duty. Watson heavily relies on his declaration submitted to the trial court wherein he states that Bevins told him the insurance company instructed Bevins not to file the MJOP because it sought to damage Watson's claims against Pickett. As stated by the trial court, there was no evidence that the decisions of Watson's attorneys were "actually made" to benefit Pickett. More to the point, Watson did not plead a cause of action for breach of fiduciary duty.

In August 2021 and January 2022, Watson asked his attorneys to pursue a MJOP on the ground that Pickett did not have authority to bring his breach of fiduciary duty and conversion causes of action.[5]  But this argument was previously made when Watson, in pro per, filed the January 4, 2019 demurrer.  In the demurrer he argued Pickett's lawsuit was invalid because Watson had no duty to Pickett and he (Watson) could not be sued as a board member.  The trial court rejected the argument by way of an order overruling the demurrer.  It is true that a MJOP may be filed on the same grounds that were raised and rejected in a previous demurrer, but this is permissible only if "there has been a material change in applicable case law or

---

[5]     In the trial court, Watson took the position that the MJOP would have been granted on all causes of action, and he would have been dismissed from the case much sooner than his release on the settlement date.  In his opposition to the summary judgment motion, he highlighted the importance of a dismissal at this stage in the two ways.  Watson pointed out that, while the lawsuit was pending, he was required as a FINRA arbitrator, to disclose that he had been sued but, if he had been dismissed at the MJOP stage, that disclosure would have been absolved.  Second, he drew a distinction in the reputational damage of being dismissed at the MJOP stage versus being dismissed without admitting liability at the settlement stage; the former being less damaging.

On appeal, however, Watson takes the position that "some" of the Pickett's claims would have been dismissed if a MJOP had been filed.  Watson does not explain the change in positions, why the dismissal of some actions would absolve him of his disclosure obligations, or how it would have benefited him to have some actions dismissed at a MJOP but settle (without admission of liability) on one or more remaining action.

10

statute since the ruling on the demurrer." (§ 438, subd. (g)(1).) Watson does not address this provision in his opening brief even though the trial court indicated that, if the MJOP had been brought, it would have been "improper" under section 438, subdivision (g)(1).[6] Nor does he discuss the trial court's order precluding further dispositive motions. Watson's defense attorneys had no professional duty to file a futile MJOP based on a previously rejected theory.[7] Indeed, had Cody filed a MJOP, he would have directly violated a court order not to do so.[8]

---

[6] The trial court's determination that MJOP would not have passed muster under section 438, subdivision (g)(1) is also relevant to causation. While causation is not discussed in detail herein, we make the following observations. To satisfy the element of causation, plaintiff was required to establish a more favorable judgment or settlement would have resulted if defendants had filed the MJOP. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.) Causation is a question for the trial court in a legal malpractice action if the issue hinges on a question of law that would have been determined by the trial court in the underlying action. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 970.) Because the trial court acknowledged the MJOP would have been improper, it stands to reason that the motion would have been denied. This, in turn, defeats the element of causation.

[7] At oral argument (but not in his brief), Watson contended the motion was permissible under section 438, subdivision (g)(2). This provision allows for a MJOP when a prior demurrer was not made on the same ground. Because Watson's demurrer covered the grounds proposed for the MJOP, subdivision (g)(2) is not applicable.

[8] "The judgmental immunity doctrine relieves an attorney from a finding of liability even where there was an unfavorable result if there was an 'honest error in judgment concerning a

11

## B.     *Intentional Infliction of Emotional Distress (IIED)*

Even if we were to carve out the IIED action as not sounding in legal malpractice, Watson's arguments remain unpersuasive.  To establish IIED, a plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct."  (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86.)

We begin and end our discussion with the first element. "Outrageous conduct is that which exceeds "'. . . all bounds usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress. [Citation.]""  (*McDaniel v. Gile* (1991) 230 Cal.App.3d 363, 372.) Watson does not mention the outrageous conduct element of IIED in his opening brief, nor does he tie specific evidence to conduct

---

doubtful or debatable point of law . . . ."' (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 379.)  Cody argues for the applicability of this doctrine.  Because we hold Cody did not make any error in judgment, we decline to address the doctrine.

Truck, Bevins, and Baxter-Walker, argue the insurer and its counsel had a right to settle the case and had no duty to consult Watson.  Their argument is supported by appropriate authority, e.g., *Fiege v. Cooke* (2004)125 Cal.App.4th 1350,1355 and *Western Polymer Technology, Inc. v. Reliance Ins. Co.* (1995) 32 Cal.App.4th 14, 24.  But we do not interpret the basis of Watson's causes of action to be that defendants' entry into the settlement was inappropriate; rather, our reading of the complaint is that its factual basis is grounded in the failure to file the MJOP.

that is calculated to cause mental distress. Certainly, the decision to not file a unmeritorious MJOP is far afield from outrageous conduct.

## C.   *Conflict of Interest*

Watson claims the order granting summary judgment should be reversed because Watson was represented by Farmer's attorneys and "Pickett was also its client." It is quite clear from the record that Pickett's attorney (Robert D. Conway, Esq.) was a member of a firm that was distinct from the firms associated with Bevins and Cody. Also, Watson fails to cite any authority explaining (1) why, as a matter of law, it is inappropriate for an insurance company to employ two different firms to represent opposing sides in a lawsuit, and (2) how this purported conflict factors into whether the complaint survives a summary judgment motion. It is the appellant's burden to provide reasoned arguments and citations to relevant legal authorities to support that argument. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)[9]

---

[9]   Having determined that failing to file the MJOP was not a legitimate foundation for Watson's causes of action, we do not address Watson's argument that the trial court erroneously imposed an issue sanction, i.e., finding Watson's destruction of relevant evidence precluded him from arguing his damages included the loss of FINRA arbitration income.

13

**DISPOSITION**

The order granting summary judgment and the judgment are affirmed.  Defendants are to recover costs on appeal.[10]
<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>**.**


KUMAR, J.[*]

We Concur:


HOFFSTADT, P. J.



MOOR, J.

---

[10]    We decline the invitation by Truck, Bevins and Baxter-Walker to find Watson's appeal frivolous.

[*]    Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.